## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATHRYN FRANKOLA** | * | **CIVIL ACTION NO.** |
| **Plaintiff** | * | |
| | * | |
| **Versus** | * | |
| | * | |
| **LOUISIANA STATE UNIVERSITY** | * | |
| **SCHOOL OF MEDICINE IN NEW** | * | |
| **ORLEANS, and BOARD OF** | * | |
| **SUPERVISORS OF LOUISIANA** | * | |
| **STATE UNIVERSITY and AGRICULTURAL** | * | |
| **And MECHANICAL COLLEGE** | * | |

## COMPLAINT

The complaint of Kathryn Frankola ("Plaintiff"), a person of the full age of majority and a resident of Orleans Parish, State of Louisiana, represents the following:

## JURISDICTION AND PARTIES

1.   This Court has procedural jurisdiction and subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("federal question") and 1337. Venue lies in the United States Court for the Eastern District of Louisiana under 28 U.S.C. 1391.

2.   Additionally, the Court can exercise supplemental jurisdiction over Plaintiff's State Law Tort Claims pursuant to 28 U.S.C. § 1367.

3.   Plaintiff, a person of the full age of majority and a competent individual, at all relevant times was a student, properly enrolled with Defendant, Louisiana State University School of Medicine in New Orleans, located at 1901 Perdido Street, New Orleans, Louisiana 70112.

4.   Plaintiff was a resident of Orleans Parish, State of Louisiana at all times relevant to this Complaint.

1

5.  Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, operates an institution of higher learning, particularly, the Louisiana State University School of Medicine in New Orleans.

6.  Defendant, Louisiana State University School of Medicine in New Orleans ("LSU School of Medicine"), is a division of Louisiana State University and Agricultural and Mechanical College, located in Orleans Parish in the Eastern District of Louisiana.

7.  Louisiana State University School of Medicine in New Orleans and Board of Supervisors of Louisiana State University and Agricultural and Mechanical College are referenced herein collectively as "Defendants."

**FACTUAL BACKGROUND**

8.  In 2009, Plaintiff made application for enrollment with Louisiana State University School of Medicine in New Orleans.

9.  In March of 2010, Plaintiff was accepted into Louisiana State University School of Medicine in New Orleans.

10. Louisiana State University School of Medicine in New Orleans is an institution that receives both state and federal funds, be it directly or through student loan programs.

11. Specifically, Plaintiff was admitted into Louisiana State University School of Medicine in New Orleans' M.D./Ph. D. program.

12. In August of 2010, Plaintiff began attending classes at Louisiana State University School of Medicine.

13. In August 2010, soon after she began her classes at Louisiana State University School of Medicine in New Orleans' M.D./Ph. D. program, plaintiff experienced a bipolar episode which resulted in her hospitalization.

14.  Also, in August of 2010, the Dean of Students at Louisiana State University School of Medicine in New Orleans, Dr. Joseph Delcarpio, was made informed and made aware of plaintiff's bipolar episode and subsequent hospitalization.

15.  Plaintiff successfully passed all of her classes in her first semester at LSU School of Medicine.

16. From January 2011 until May 2011, Plaintiff attended her second semester at LSU School of Medicine.

17. In May of 2011, Plaintiff was informed that she failed one class, Physiology, which she took during her second semester.

18.  During the spring semester of 2011, Plaintiff received no accommodations despite the fact that LSU School of Medicine knew of her disability.

19.     As a direct result of her Physiology grade and as a direct result of the lack of accommodations, Plaintiff was expelled and/or denied access to classes in the M.D./Ph. D. program at L.S.U. School of Medicine in New Orleans.

20.     Because Plaintiff was deemed an out-of-state student, she was then forced to sit out a year to obtain in-state residency before she was eligible for re-admittance.

21.     In an attempt to fulfill her passion and goal to become a doctor, Plaintiff capitulated to the demands of Defendants and agreed to the terms of re-admission.

22.     During the Summer of 2011, Plaintiff retook Physiology at the University of Vermont and obtained a passing grade.

23.     From August 2011 until June 2012, Plaintiff lived and worked in New Orleans, Louisiana.

24.     In May of 2012, Plaintiff had a second bipolar episode and subsequent hospitalization.  In June of 2012, Plaintiff voluntarily informed the Dean of Students, Dr. Joseph Delcarpio, of this occurrence.

25.     In June of 2012, Plaintiff was readmitted to L.S.U. School of Medicine in New Orleans. Prior to her readmission, L.S.U. School of Medicine required Plaintiff to produce a letter from a psychiatrist regarding her mental fitness and capacity to be a medical student. Plaintiff fulfilled this requirement.

26.     In August of 2012, Plaintiff began her second year of medical school at L.S.U. School of Medicine.

27.     In December 2012, Plaintiff failed her Pathology class. As a result, and as per L.S.U. School of Medicine's requirements, Plaintiff retook Pathology in the summer of 2013.

28.     In July of 2013, Plaintiff retook Pathology and failed based on a grade that was slightly below passing.  During this course in July of 2013, there was no instruction for Plaintiff by a Professor. All work was to be done independently.

29.     Again, Plaintiff was denied any accommodations which would have assisted her in passing this course.

30.     Throughout the 2012-2013 school year, the Dean of Students, Dr. Joseph Delcarpio was aware of Plaintiff's medical condition and made no effort to provide accommodations considering her medical disabilities.

31.     In July of 2013, L.S.U. School of Medicine allowed Plaintiff to remain enrolled in medical school.  However, as a condition of remaining enrolled, Plaintiff was required to repeat the entire second year of school.

32.     In August of 2013, Plaintiff began retaking her second year of medical school at L.S.U. School of Medicine.

33.     In September 2013, Plaintiff became pregnant.

34.     In December of 2013, Plaintiff was informed that she successfully passed all of her classes for the first semester of her second year of medical school at L.S.U. School of Medicine.

35.     In January of 2013, Plaintiff was in the second trimester of her pregnancy.

36.     In January of 2013, as a result of her pregnancy and other medical and personal issues, Plaintiff missed several days of medical school.

37.     Also in January of 2013, Plaintiff had discussions with the Dean of Students, Dr. Joseph Delcarpio about her medical issues, including her pregnancy, and personal issues.

38.     At the recommendation of Dr. Joseph Delcarpio, Plaintiff enrolled in a Campus Assistance Program (CAP) with L.S.U. School of Medicine.

39.     The Campus Assistance Program is a service provided by Defendants and LSU Health Sciences Center at New Orleans to assist active students in resolving personal, academic or work related issues including, but not limited to mental health issues and crisis management.

40.     During these discussions, which took place in January of 2013, with Dr. Joseph Delcarpio, he recommended to Plaintiff that based on her pregnancy and her medical issues she should take a medical leave of absence.

41.     At no time were the terms of the medical leave fully explained to Plaintiff.

42.     Nor were any risks of taking the medical leave fully explained to Plaintiff.

43.     However, Dr. Joseph Delcarpio explained to plaintiff that if she continued with the Campus Assistance Program and if she provided a "Fit for Duty" letter from a psychiatrist or other appropriate medical health professional, plaintiff would be able to resume her courses.

44.     During this meeting, Plaintiff was persuaded to sign certain documents under duress and emotional strain.  At the time of taking this "medical leave", it was known by L.S.U. School of Medicine that Plaintiff was suffering from medical disabilities and pregnancy.

45.     Based on communications with Dr. Joseph Delcarpio, Plaintiff believed that she would be permitted to immediately resume her classes in 2015 with the L.S.U. School of Medicine upon presenting a "Fit for Duty" letter.

46.     Moreover, based on Dr. Joseph Delcarpio's assurances and the assurances of Defendants, Plaintiff was under the impression that her resumption of classes would be automatic.

47.     In April of 2014, Plaintiff obtained a "Fitness for Employment/Enrollment Form" signed by Annemarie Casesa, M.D.  In accordance with Dr. Joseph Delcarpio's request, Plaintiff forwarded this form on to Dr. Joseph Delcarpio's attention.

48.     Soon after, Dr. Joseph Delcarpio informed Plaintiff that it was "too early" and that she would have to resubmit another "Fitness for Employment/Enrollment Form" at a later time.

49.     In May of 2014, Plaintiff gave birth to a healthy baby boy.

50.     As per the agreement with L.S.U. School of Medicine and Dr. Joseph Delcarpio, Plaintiff participated in the Campus Assistance Program throughout June of 2014.

51.     As per the agreement with L.S.U. School of Medicine and Dr. Joseph Delcarpio, Plaintiff participated in the Campus Assistance Program throughout July of 2014.

52.    As per the agreement with L.S.U. School of Medicine and Dr. Joseph Delcarpio, Plaintiff participated in the Campus Assistance Program throughout August of 2014.

53.    As per the agreement with L.S.U. School of Medicine and Dr. Joseph Delcarpio, Plaintiff participated in the Campus Assistance Program throughout September of 2014.

54.    As per the agreement with L.S.U. School of Medicine and Dr. Joseph Delcarpio, Plaintiff participated in the Campus Assistance Program throughout October of 2014.

55.    In October of 2014, Plaintiff requested a "Fitness for Employment/Enrollement Form" from her treating psychiatrist, Dr. Leslie Lawrence.  Based on information and belief, and in accordance with Dr. Joseph Delcarpio's request, this form was forwarded on to Dr. Joseph Delcarpio's attention.

56.    In November of 2014, Plaintiff requested that she resume classes at L.S.U. School of Medicine.

57.    On November 17, 2014, Joseph Delcarpio issued correspondence to Plaintiff in which he informed Plaintiff that she would not be allowed to resume classes at L.S.U. School of Medicine.

58.    On this date, Plaintiff was effectively expelled.

59.    In not allowing Plaintiff to resume classes and expulsion, Dr. Joseph Delcarpio cited Plaintiff's past academic performance. However, Plaintiff's prior academic performance was entirely irrelevant to her resumption of classes at L.S.U. School of Medicine.

60.    Prior to taking a "medical leave" in accordance with Dr. Joseph Delcarpio's recommendations,  Plaintiff had already resolved all prior academic issues with L.S.U. School of Medicine.

61.     In accordance with L.S.U. School of Medicine's appeal process for academic dismissal, Plaintiff appealed the decision within fifteen (15) days of the notification of her dismissal.

62.     In January of 2015, Plaintiff was informed that her appeal was denied.

63.     The Defendants' decision to deny Plaintiff clearly indicates that Plaintiff was treated differently than a similarly disabled peer.

64.     The Defendants' treatment of Plaintiff clearly indicates that she was singled out and not allowed the same process or procedure which would have been afforded to similarly disabled classmates and to other female and pregnant classmates.

65.     The Defendants' decision to deny Plaintiff admission into the school, clearly indicates that Plaintiff was treated differently than her peers and was discriminated against based upon her medical disabilities and pregnancy.

66.     To date, Defendants have denied Plaintiff "readmission" into L.S.U. School of Medicine, despite the fact that Plaintiff only took a medical leave of absence at the recommendation of the Dean of Students, Dr. Joseph Delcarpio.

67.     Ultimately, Plaintiff, a pregnant woman in her second trimester,  was set up to fail by the Defendants.

68.     Plaintiff believes and therefore avers that Defendants failed to provide a formal process where her request for reasonable accommodations was fairly and unbiasedly considered.

## COUNT I

## SUBSTANTIVE AND PROCEDURAL VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION ACT

69.     The preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth herein at length.

70.     Section 504 of the Rehabilitation Act, 29 U.S.C.A. Sections 794, states in pertinent part:

> "[n]o otherwise qualified individual with a disability in the United States, as defined in § 705(20) of this title shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance, or under any program or activity conducted by an executive agency or by the United States Postal Service…"

71.     In January of 2014, Plaintiff had discussions with the Dean of Students, Dr. Joseph Delcarpio about her medical issues, including her pregnancy, and personal issues.

72.     At the recommendation of Dr. Joseph Delcarpio, Plaintiff enrolled in a Campus Assistance Program (CAP) with L.S.U. School of Medicine.

73.     In November of 2014, Plaintiff was denied accommodations by the school and was ultimately expelled without notice.

74.     Plaintiff's expulsion from L.S.U. School of Medicine was based on her disability and pregnancy.

75.     As a result of defendants' actions, Plaintiff was denied reasonable accommodations to remain enrolled as a student in the same manner as her non-disabled and disabled peers.

76.     The procedural violations, no process, proper appeal or proper grievance, resulted in substantive deprivations including, but not limited to, services offered being withheld from Plaintiff.

77.     Based on the facts asserted in this Complaint, Plaintiff's rights were not safeguarded as required under Section 504 at 34 C.F.R. Section 104.7.

78.     Alternatively, Plaintiff's claim of a 504 violation stands alone and without regard to treatment received by a similarly disabled peer in that she was excluded from participation in, denied the benefits of, and subject to discrimination by the Defendants.

79.     Section 504 of the Rehabilitation Act of 1973 at paragraph 104.7, entitled "Designation of Responsible Employees and Adoption of Grievance Procedures: reads as follows:

(a)     Designation of responsible employee. A recipient that employs fifteen or more persons shall designate at least one person to coordinate its efforts to comply with this part.

(b)     Adoption of grievance procedures. A recipient that employs fifteen or more persons shall adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by this part.  Such procedures need not be established with respect to complaints from applicants for employment or from applicants for admission to postsecondary educational institutions.

80.     Plaintiff believes and therefore avers that defendants have denied Plaintiff her procedural rights pursuant to Section 504 by:

(i.)     Not having the proper mechanism or procedure (including but not limited to the lack of a "responsible employee") in place for disabled students who seek accommodations to have their requests appropriately considered;

(ii.)    Allowing their employees to make the determination of whether an accommodation is reasonable on their own, without review, due to the lack of a procedure approved by the Defendants;

(iii.)   Having no appeal or grievance procedure available to students who seek and are refused accommodations.

81.     To establish a violation of Section 504, a plaintiff must show that "(1.) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities;

(3) the school or board of education   receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation, 490 F.3d 337, 350 (*3d. Cir. 2007*)*.  In addition, "[t]he state must have failed to provide the Service for the sole reason that the child is disabled." *Andrew M.*, 490 F.3d at 350.

82.      Applying the facts of the instant matter, all of the elements set forth in the preceding paragraph can be satisfied:

(i.)      As set forth in the above-referenced listed paragraphs, Defendants knew that plaintiff was disabled from the very first month of her enrollment;

(ii.)      Plaintiff was otherwise qualified to participate in the school activities and classes by virtue of her admission into the M.D./Ph.D. program;

(iii.)      Plaintiff was otherwise qualified to participate in the school activities and classes by virtue of her re-admission into the M.D. program in 2012;

(iv.)      The Defendants receive federal aid both directly and through student loan programs; and

(v.)      Plaintiff was excluded from participation in, and denied benefits of, or subject to discrimination by the Defendants when:

(a.) She was not offered proper accommodations in 2011 and 2012;

(b.) She was denied access to classes, school activities, and programs in 2011;

(c.) She was expelled in 2014;

(d.) She was coerced into taking "medical leave" which resulted in her expulsion;

(e.) The Defendants did not have the proper mechanism or procedures (including but not limited to the "lack of responsible employees") in place for disabled students who seek and/or are refused accommodations to have their requests appropriately considered;

(f.) The defendants allowed its employees to make the determination of whether an accommodation is reasonable on their own, without review, due to a lack of procedure approved by Defendants.

(g.) Having no appeal or grievance procedures available to students who seek and are refused accommodations; and

(h.) Plaintiff's similarly disabled students peers were granted accommodations which Plaintiff was denied.

83. Additionally, "[A] plaintiff need not establish that there has been an intent to discriminate in order to prevail under § 504." *Nathanson v. Med. Coll. Of Pennsylvania*, 926 F. 2d 1368, 1384 (3d Cir. 1991).

84. As a result of the above-described procedural and substantive violations, plaintiff has suffered damages as described more particularly herein.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of damages in excess of seventy five thousand ($75,000.00) dollars exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly,

plaintiff demands entry of judgment on her behalf and against the Defendants for all the damages that Plaintiff is entitled to, including. but not limited to,  past, present and future mental anguish and emotional distress, past, present and future medical expenses, lost wages and diminished earning capacity; and loss of enjoyment of life, plus punitive damages, reasonable attorney's fees and other such relief as provided by law and as this Honorable Court deems appropriate.

## COUNT II

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

85.     The preceding paragraphs are incorporated herein by reference as if fully set forth at length.

86.     Louisiana State University School of Medicine in New Orleans and Board of Supervisors of Louisiana State University and Agricultural and Mechanical College are state universities and/or institutions that are prohibited by Title II of the ADA against discriminating against because she or he has a disability.

87.     42 U.S.C. § 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

88.     As set forth in the above-listed paragraphs, Defendants knew that plaintiff was disabled from the very first month that plaintiff attended classes;

89.     Plaintiff was otherwise qualified to participate in the school activities and classes by virtue of her admission into the M.D./Ph.D.. program;

90.     Plaintiff was otherwise qualified to participate in the school activities and classes by virtue of her re-admission into the M.D. program in 2012;

91.     Plaintiff was excluded from participation in, and denied benefits of, or subject to discrimination by the Defendants.

92.     Non-exclusive examples of Defendants' discriminatory conduct include, but are not limited to: (i.) not offering proper accommodations throughout 2011 to 2014; (ii.) Plaintiff's denial of classes, programs, and school activities in 2012;  (iii.) Plaintiff's expulsion in 2014; (iv.) The denial of Plaintiff's appeal in January of 2015; and (v.) Coercing Plaintiff into taking medical leave which resulted in her ultimate expulsion.

93.     The Defendants did not have the proper mechanism or procedures in place for disabled students who seek and/or are refused accommodations to have their requests appropriately considered;

94.     The defendants allowed its employees to make the determination of whether an accommodation is reasonable on their own, without review, due to a lack of procedure approved Defendants.

95.     Defendants have no appeal or grievance procedures available to students who seek and are refused accommodations.

96.     Plaintiff's similarly disabled students peers were granted accommodations which Plaintiff was denied.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of damages in excess of seventy five thousand ($75,000.00) dollars exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, plaintiff demands entry of judgment on her behalf and against the Defendants for all the damages that Plaintiff is entitled to, including. but not limited to,  past, present and future mental anguish and emotional distress, past, present and future medical expenses, lost wages and diminished

earning capacity; and loss of enjoyment of life, plus punitive damages, reasonable attorney's fees and other such relief as provided by law and as this Honorable Court deems appropriate.

## COUNT III

## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

97.     The preceding paragraphs are incorporated herein by reference as if fully set forth at length.

98.     Defendants' discriminatory conduct, outlined in the preceding paragraphs, violated Plaintiff's rights under 20 U.S.C. § 1681, *et seq.*

99.     20 U.S.C. § 1681 states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

100.     As stated above, Defendants' provided Plaintiff with medical leave in January of 2014.

101.     This medical leave was based on her pregnancy and other medical issues.

102.     Upon request to resume her classes, Plaintiff was denied.

103.     Defendants' conduct was discriminatory in nature and, specifically discriminated against Plaintiff based on her gender and her pregnancy.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of damages in excess of seventy five thousand ($75,000.00) dollars exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, plaintiff demands entry of judgment on her behalf and against the Defendants for all the damages that Plaintiff is entitled to, including. but not limited to,  past, present and future mental anguish and emotional distress, past, present and future medical expenses, lost wages and diminished

earning capacity; and loss of enjoyment of life, plus punitive damages, reasonable attorney's fees and other such relief as provided by law and as this Honorable Court deems appropriate.

## COUNT IV

## DAMAGES

104.    The preceding paragraphs are incorporated herein by reference as if fully set forth at length.

105.    As a result of the Defendants' violation of her rights under section 504, Title II of the Americans With Disabilities Act and Title IX, the Plaintiff has suffered the following non-exclusive damages:

(a)    Humiliation and embarrassment as a result of being expelled;

(b)    The costs which have accompanied her for having had to "start all over again" for her second year at L.S.U. School of Medicine;

(c)    The costs of having her career path essentially eliminated;

(d)    Past, present and future mental anguish and emotional distress;

(e)    Past, present and future medical expenses;

(f)    Lost wages and diminished earning capacity; and

(g)    Loss of enjoyment of life.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of damages in excess of seventy five thousand ($75,000.00) dollars exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, plaintiff demands entry of judgment on her behalf and against the Defendants for all the damages that Plaintiff is entitled to, including. but not limited to,  past, present and future mental anguish and emotional distress, past, present and future medical expenses, lost wages and diminished

16

earning capacity; and loss of enjoyment of life, plus punitive damages, reasonable attorney's fees and other such relief as provided by law and as this Honorable Court deems appropriate.

## COUNT V

## REQUEST FOR PUNITIVE DAMAGES

106.    The preceding paragraphs are incorporated herein by reference as if fully set forth at length.

107.    The aforementioned conduct of the Defendants was outrageous and/or done willfully, wantonly or with reckless indifference to the rights of Plaintiff.

108.    The Defendants knew or should have known that their conduct was in direct violation of federal statutes, and in so doing, conducted themselves knowingly, creating a risk of unnecessary harm to Plaintiff.

109.    The Defendants' failure to provide the reasonable and necessary accommodations to the Plaintiff denied her right to a free and appropriate education.

110.    Defendants' reckless, outrageous, wanton, willful and malicious behavior includes but is not limited to:

(a) failing to provide Plaintiff with a reasonable accommodation when defendants knew or should have known of her fragile mental condition;

(b) failure of the defendants to provide reasonable and appropriate accommodations resulting in plaintiff being excluded from her chosen profession;

(c) Failure to provide Plaintiff with procedural safeguards mandated by statute;

(d) Failure to provide reasonable accommodations to Plaintiff when the same accommodations were made available to other disabled students with similar disabilities.

17

111.   The defendants and their staff, knew or should have known that these acts and other acts listed in this Complaint would result in psychological injury to Plaintiff.

112.   As a direct and proximate result of the reckless, outrageous, wanton, willful and malicious conduct of the Defendants, Plaintiff has endured, and will continue to endure, psychological and emotional suffering.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of damages in excess of seventy five thousand ($75,000.00) dollars exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, plaintiff demands entry of judgment on her behalf and against the Defendants for all the damages that Plaintiff is entitled to, including. but not limited to,  past, present and future mental anguish and emotional distress, past, present and future medical expenses, lost wages and diminished earning capacity; and loss of enjoyment of life, plus punitive damages, reasonable attorney's fees and other such relief as provided by law and as this Honorable Court deems appropriate.

## COUNT VI

## STATE LAW CLAIMS

113.   The preceding paragraphs are incorporated herein by reference as if fully set forth at length.

114.   The aforementioned Defendants, Louisiana State University School of Medicine in New Orleans and Board of Supervisors of Louisiana State University and Agricultural and Mechanical College are all liable unto Plaintiff for their own negligence under Louisiana law, including, but not limited to,  La. Civil Code Ann. Art. 2315 and 2316.

115.   The aforementioned Defendants, Louisiana State University School of Medicine in New Orleans and Board of Supervisors of Louisiana State University and Agricultural and

Mechanical College are all liable unto Plaintiff for their intentional infliction of emotional distress upon Plaintiff.

116.    As a direct result of the aforementioned facts, caused by the negligence and fault of the Defendants, Plaintiff seeks the following non-exclusive elements of damages:

(h) Past, present and future mental anguish and emotional distress;

(i)  Past, present and future medical expenses;

(j)  Lost wages and diminished earning capacity; and

(k) Loss of enjoyment of life.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of damages in excess of seventy five thousand ($75,000.00) dollars exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, plaintiff demands entry of judgment on her behalf and against the Defendants for all the damages that Plaintiff is entitled to, including. but not limited to,  past, present and future mental anguish and emotional distress, past, present and future medical expenses, lost wages and diminished earning capacity; and loss of enjoyment of life, plus punitive damages, reasonable attorney's fees and other such relief as provided by law and as this Honorable Court deems appropriate.

Respectfully submitted,


/s/  Jon G. Bethune
_____
**JON G. BETHUNE (Bar #30221)**
The Law Office of Jon G. Bethune, L.L.C.
4701 Tchoupitoulas Street, Suite B
New Orleans, Louisiana 70115
Telephone:  (504) 218-8570
Facsimile:   (504) 267-4893
e-mail: jbethune@bethune-law.com
**ATTORNEY FOR KATHRYN FRANKOLA**