UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| KATHRYN FRANKOLA | | CIVIL ACTION |
| | * | |
| | | NUMBER:  2:15-CV-05933 |
| VERSUS | * | |
| | | SECTION:  H(5) |
| LOUISIANA STATE UNIVERSITY | * | |
| SCHOOL OF MEDICINE IN NEW | | JUDGE JANE TRICHE MILAZZO |
| ORLEANS, and BOARD OF | * | |
| SUPERVISORS OF LOUISIANA | | MAG. JUDGE  MICHAEL NORTH |
| STATE UNIVERSITY and | * | |
| AGRICULTURAL and | | |
| MECHANICAL COLLEGE | * | |
| | | |
| | * | |

**********************************

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Plaintiff, a former student at Louisiana State University School of Medicine in New Orleans, alleges violations of Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, Title IX of the Educational Amendments of 1972, and Louisiana State law when she was not readmitted as a student after she took a medical leave of absence from the school.[1]  However, and for the reasons that follow, plaintiff's allegations are unsubstantiated and otherwise fail to establish discrimination or any other violation of law.  Accordingly, plaintiff's complaint should be summarily dismissed pursuant to Rule 56 of the Federal Rules of Civil

---

[1] Rec. Doc. 1.

1

Procedure.

**Plaintiff had a poor academic record at LSU.**

Plaintiff originally began attending the LSU School of Medicine in the fall of 2010 pursuant to her admittance in a dual degree program with LSU School of Graduate Studies.[2] This dual degree program is commonly referred to as the M.D./Ph.D. program, and provides a mechanism for an out-of-state student to gain access to the medical school curriculum.[3] The out-of-state student's continued access to the medical school curriculum is contingent upon continued acceptance in the dual degree program.[4] Further, the out-of-state student is under the auspices of the School of Graduate Studies and receives a tuition waiver for the medical school curriculum.[5]

In the second semester of plaintiff's first year under the dual degree program, she failed Physiology.[6] This failure resulted in plaintiff's dismissal from LSU.[7] However, in the summer of 2011, plaintiff retook and passed Physiology at the University of Vermont.[8] Thereafter, plaintiff returned to New Orleans to live and work for a year to establish in-state residency to apply for admittance to the LSU School of Medicine.[9] Plaintiff's application to LSU School of Medicine was accepted and she began the second year curriculum of medical school in the fall of

---

[2] Exhibit A, Deposition of Kathryn Frankola, page 13 line 25 through page 14 line 6; Exhibit B, Deposition of Joseph Delcarpio, page 20 line 3 through 16 and page 21 line 13 through page 22 line 13; and Rec. Doc. 1 page 2 paragraphs 11, 13, and 19.
[3] Id.
[4] Exhibit A page 14 lines 2 through 6.
[5] Exhibit B page 20 lines 3 through 12.
[6] Rec. Doc. 1 page 3 paragraph 17 and Exhibit A page 9 lines 21 through 24.
[7] Exhibit A page 13 line 25 through page 15 line 14 and Exhibit B page 43 lines 3 through 12.
[8] Rec. Doc. 1 page 3 paragraph 22.
[9] Exhibit A page 13 line 25 through page 15 line 14 and Rec. Doc. 1 paragraphs 23 and 25.

2012.[10]

However, in the fall semester of 2012 plaintiff failed Pathology.[11]  Because of this failure, plaintiff was required to retake Pathology in the summer of 2013.[12]  Plaintiff failed this summer 2013 remediation of Pathology.[13]  Thus, by the end of plaintiff's second year of the medical school curriculum she had failed three courses; including the same Pathology course twice.  Consequently, in late summer of 2013, plaintiff's failures were brought before the Promotions Committee of the LSU School of Medicine for a determination as to plaintiff's future with the university.[14]  The Promotions Committee split the vote between three alternatives, dismissal, repeat the entire second year curriculum, or just repeat Pathology.[15]  Ultimately, plaintiff was required to repeat the entire second year curriculum on academic probation to remain enrolled.[16]  Academic probation meant automatic dismissal from the institution for a single fail in any course.[17]

Plaintiff began her repeat of the second year curriculum in the fall of 2013.[18]  Very shortly thereafter, plaintiff became pregnant in September of 2013.[19]  By the spring 2014

---

[10] Id.

[11] Exhibit A page 15 lines 15 through 18 and Rec. Doc. 1 page 4 paragraph 27.

[12] Rec. Doc. 1 page 4 paragraph 27.

[13] Exhibit A page 18 lines 3 through 9 and Rec. Doc. 1 page 4 paragraph 28.

[14] Exhibit A page 20 line 11 through page 21 line 13 and Exhibit B page 55 line 19 trough page 56 line 19.

[15] Exhibit A page 20 line 11 through page 21 line 13.

[16] Exhibit C; Exhibit A page 20 line 11 through page 21 line 13; Exhibit B page 55 line 19 trough page 56 line 19; and Rec. Doc. 1 page 4 paragraph 31.

[17] Exhibit C, letter dated August 13th, 2013 from Dr. Delcarpio to Kathryn Frankola and Exhibit B page 57 line 5 through line 21.

[18] Rec. Doc. 1 page 5 paragraph 32.

[19] Rec. Doc. 1 page 5 paragraph 33.

semester plaintiff had missed several days of school.[20]  Consequently, plaintiff discussed her options regarding her school work and exams with Joseph Delcarpio, Ph.D, Associate Dean of Student Affairs and Records for the LSU School of Medicine.[21]  Ultimately, plaintiff requested a medical leave of absence in the middle of the 2014 spring semester, which required her to seek readmission to the school upon the presentment of letters from her doctors indicating that she is cleared to return to the rigors of a fulltime medical school curriculum.[22]

In November of 2014, plaintiff requested to return to LSU School of Medicine.[23] Consequently, plaintiff and her case appeared before the Pre-clinical Sciences Readmissions Committee on November 17th, 2014.[24]  The Readmissions Committee unanimously voted not to readmit plaintiff.[25]  Plaintiff was informed of the committee's decision, and within fifteen days appealed the committee's decision to the Dean of the LSU School of Medicine, Steve Nelson, M.D.[26]  In January 2015, plaintiff was informed that her appeal to the Dean was denied.[27] Thereafter, plaintiff filed this lawsuit on November 13th, 2015.[28]

With this lawsuit plaintiff alleges violations of Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, Title IX of the Educational Amendments of 1972,

---

[20] Rec. Doc. 1 page 5 paragraph 36; Exhibit A page 21 line 19 through page 23 line 4; and Exhibit B page 63 line 6 through page 67 line 3.

[21] Exhibit A page 21 line 19 through page 23 line 4 and Exhibit B page 63 line 6 through page 67 line 3.

[22] Exhibit D, email dated June 5th, 2014 to Kate Welsh from Dr. Delcarpio, which is authenticated in Exhibit A page 58 line 20 through page 61 line 22; and Exhibit A page 21 line 19 through page 23 line 4; and Exhibit B page 63 line 6 through page 67 line 3.

[23] Rec. Doc. 1 page 7 paragraph 56 and Exhibit A page 23 line 19 through page 25 line 25.

[24] Exhibit E, committee members' declarations and Exhibit A page 23 line 19 through page 25 line 25.

[25] Exhibit E.

[26] Rec. Doc. 1 page 8 paragraph 61 and Exhibit A page 26 line 8 through 24.

[27] Rec. Doc. 1 page 8 paragraph 62 and Exhibit A page 26 line 8 through 24.

[28] Rec. Doc. 1.

and Louisiana State law.  For the reasons that follow, plaintiffs' suit should be summarily

dismissed at her cost.

**All alleged events, except the denial of plaintiff's re-admittance to the school of medicine in November of 2014, are prescribed under plaintiff's causes of action.**

Any allegation that plaintiff was illegally denied an accommodation or otherwise

discriminated against for any event that occurred a year before she filed her complaint on

November 13th, 2015 is prescribed under the law.  All of plaintiff's causes of action have a one-

year prescriptive period pursuant to federal and Louisiana law.

"This Court has previously concluded that claims arising from the ADA and

Rehabilitation Act have the one-year prescription period as dictated by state tort law."[29]  "When

Congress does not establish a limitations period for a federal cause of action, the 'general rule' is

that we borrow the most analogous period from state law."[30]  "…[B]ecause most discrimination

claims involve 'injury to the individual rights of a person,' and thus are analogous to personal-

injury tort claims."[31]  "Thus, Louisiana's one-year statute of limitations for personal injury

actions applies to [plaintiffs'] cause of action under the ADA."[32]  Likewise, the one-year

limitation period applies to § 504 Rehabilitation Act claims in Louisiana.[33]  Similarly, claims

under Title IX of the Educational Amendments of 1972 have a one-year prescriptive period

---

[29] Boyle v. Greenstein, (11-3192), 2012 WL 1932947, *3 (E.D. La. 5/29/2012).
[30] Frame v. City of Arlington, 657 F.3d 215, 237 (5th Cir. 2011) *also see* King-White v. Humble Independent School District, 803 F.3d 754 (5th Cir. 2015).
[31] Id.
[32] Brown v. Day, (99-1436), 1999 WL 816378, *12 (E.D. La.).
[33] Copper v. St. Martin Manor, (97-499), 1998 WL 46815, *3 (E.D. La.).

pursuant to Louisiana tort law.[34]   Finally, plaintiff's State law negligence and intentional infliction of emotional distress claims also have a one-year prescriptive period pursuant to Louisiana Civil Code Article 3492.  As such, any alleged tortious event that occurred a year before plaintiff filed her complaint on November 13th, 2015 is prescribed.

Within plaintiff's complaint, the only alleged events that occurred with the one-year prescriptive period was plaintiff's notification that the Readmissions Committee had denied her request to be readmitted and the Dean's denial of plaintiff's appeal of the Readmissions Committee's decision.  All other allegations in plaintiff's complaint are beyond the prescriptive period and cannot provide a basis for liability.  Additionally, plaintiff's timely allegations also fail to provide a basis for liability for the reasons that follow.

**Plaintiff cannot establish that defendant's actions were discriminatory or otherwise refute its legitimate reasons for its actions.**

Title II of the American with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[35]   "The R[ehabilitation] A[ct] was enacted to 'to ensure that handicapped individuals are not denied jobs or other benefits because prejudiced attitudes or ignorance of others.'"[36]   The language in the ADA expressly provides that "the remedies,

---

[34] King-White v. Humble Independent School District, 803 F.3d 754 (5th Cir. 2015).
[35] Tennessee v. Lane, 541 U.S. 509, 513, 124 S.Ct. 1975, 1982, 158 L.Ed.2d 820 (2004).
[36] Delano-Pyle v. Victoria County, Tx., 302 F.3d 567, 574 (5th Cir. 2002) *quoting* Brennan v. Stewart, 834 F.2d 1248, 1259 (5th Cir. 1988) and *citing* 29 U.S.C. § 794.

6

procedures, and rights" available under the Rehab Act are also accessible under the ADA.[37] Accordingly, "the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act."[38]  "Thus, 'jurisprudence interpreting either section is applicable to both.'"[39]  In other words, "the Rehabilitation Act and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."[40]  "A plaintiff asserting a private cause of action for violations of the ADA or the R[ehabilitation] A[ct] may only recover compensatory damages upon a showing of intentional discrimination."[41]

To establish a prima facie case of discrimination under either statute in "the context of a student excluded from an educational program," a plaintiff must prove that:  1) she has a qualifying disability; 2) she is otherwise qualified to participate in the defendant's program; and 3) she was excluded from the program solely by reason of her disability.[42]  In this case, Ms. Frankola is unable to substantiate that she was qualified to continue studies at LSU School of Medicine or denied readmission solely based upon her disability.  "Many students, handicapped or not, who qualify for admission into [medical] school flunk out.  They are not qualified for

---

[37] Bennett-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005) *citing* Pace v. Bogalusa City School Bd., 403 F.3d 272, 287–88 (5th Cir. 2005).

[38] Id.

[39] Delano-Pyle v. Victoria County, Tx., 302 F.3d 567, 574 (5th Cir. 2002) *quoting* Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000).

[40] Shurb v. Univ. of Texas Health Science Center at Houston-School of Medicine, 63 F.Supp.3d 700, 706 (S.D. Tex. 10/24/14).

[41] Shurb v. Univ. of Texas Health Science Center at Houston-School of Medicine, 63 F.Supp.3d 700, 706 (S.D. Tex. 10/24/14) *quoting* Delano-Pyle v. Victoria County, Tx., 302 F.3d 567, 574 (5th Cir. 2002) *also see* Sweeny v. Texas State University, 2016 WL 3829552, *2 (W.D. Tex. 07/11/2016).

[42] Maples v. Univ. of Texas Medical Branch at Galveston, 901 F.Supp.2d 874, 879 (S.D. Tex. 09/28/12); Shurb v. Univ. of Texas Health Science Center at Houston-School of Medicine, 63 F.Supp.3d 700, 707 (S.D. Tex. 10/24/14); Purvis v. Texas A&M Univ., 2014 WL 4851903, *4 (S.D. Tex. 09/29/14); and Sweeny v. Texas State University, 2016 WL 3829552, *2 (W.D. Tex. 07/11/2016).

retention. The question here is whether [plaintiff] is otherwise qualified for retention in the [medical school] program."[43] Being otherwise qualified for admission and being otherwise qualified for retention are not the same.[44] Ms. Frankola failed to meet the academic standards of the medical school program, thus was not otherwise qualified under the statutes.[45]

As mentioned, plaintiff had a poor academic record during her brief time at the LSU School of Medicine. She failed to pass three courses; one after multiple attempts, and was on academic probation when she took medical leave just before an exam period. Upon plaintiff's application for readmission to the school after her medical leave, the LSU School of Medicine Pre-clinical Sciences Readmissions Committee exercised its academic discretion and unanimously decided to deny her readmission based solely upon her poor academic performance.[46]

"Discretion to determine, on academic grounds, who may be admitted to study, has been described as one of 'the four essential freedoms' of a university."[47] "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlements to promotion or graduation."[48] "If a 'federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies,' far less it is suited to evaluate the substance of the multitude of academic

---

[43] McGregor v. La. St. Univ. Bd. of Sup'rs, 3 F.3d 850, 854 (5th Cir. 1993).
[44] Id.
[45] Exhibit E.
[46] Exhibit E.
[47] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 226 FN 12, 106 S.Ct. 507, 514, 88 L.Ed.2d 523 (1985) citing Univ. of Cal. Regents v. Bakke, 438 U.S. at 312, 98 S.Ct., at 2759 (1978).
[48] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 FN 11, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985) citing Bd. of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 96, 98 S.Ct. 948. 958, 55 L.Ed.2d 124 (1978).

decisions that are made daily by faculty members of public educational institutions…"[49] "…
[T]he determination whether to dismiss a student for academic reasons requires an expert
evaluation of cumulative information and is not readily adapted to the procedural tools of judicial
or administrative decisionmaking."[50] "This is especially true as one advances through the
varying regimes of the educational system, and the instruction becomes both more individualized
and more specialized."[51] The "[c]ourts are particularly ill-equipped to evaluate academic
performance … and [are] warn[ed] against any such judicial intrusion into academic
decisionmaking."[52] "Plainly [judges] may not override [faculty's professional judgment] unless
it is such a substantial departure from accepted academic norms as to demonstrate that the person
or committee responsible did not actually exercise professional judgment."[53]

In its professional judgment the Readmissions Committee simply decided that Ms.
Frankola failed to perform adequately or make sufficient academic progress.[54] Plaintiff's
academic record was poor the entire time she was enrolled in medical school; and in three years
of enrollment she did not complete a single year of study successfully.[55] This is sole reason
plaintiff was denied readmission into school after she took medical leave. Thus, plaintiff's
claims of discrimination are false and her case should be summarily dismissed.

The same exact legal standard and analysis precludes plaintiff's Title IX claim. "To

---

[49] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 226, 106 S.Ct. 507, 514, 88 L.Ed.2d 523 (1985) *quoting*
Bishop v. Wood, 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).
[50] Bd. of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 90, 98 S.Ct. 948. 955, 55 L.Ed.2d 124 (1978).
[51] Id.
[52] Id at 91.
[53] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985).
[54] Shaboon v. Duncan, 252 F.3d 722, 731 (5th Cir. 2001).
[55] Exhibit E.

prove a violation of Title IX, a plaintiff must establish a *prima facie* case by showing a preponderance of the evidence that: (1) she was a member of a protected class; (2) she was performing the academic requirements at a level well enough to meet her educator's legitimate expectations; (3) she suffered adverse treatment; and, (4) the educational program continued to instruct and credit other students."[56]   For the same reasons set out above, plaintiff's Title IX claim fails because she was not meeting the required academic performance standards of the university.  Thus, plaintiff cannot establish a prima facie case and her Title IX claims should also be summarily dismissed.

**Plaintiff's State law claims are also flawed and should be summarily dismissed as well.**

On the final pages of her complaint, plaintiff conclusory alleges Louisiana State law claims of negligence and intentional infliction of emotional distress.  Nowhere else in her complaint has plaintiff identified a specific legal duty under Louisiana law that defendant allegedly breached.  Accordingly, plaintiff's reference to negligence is completely conclusory and fails to sufficiently state a valid legal claim.  Thus, it should be summarily dismissed.

Finally, nothing alleged in plaintiff's complaint comes remotely close to the high standard necessary to sustain an action for intentional infliction of emotional distress.  In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his

---

[56] Darian v. Univ. of Mass. Boston, 980 F.Supp 77, 91 (D. Mass. 09/16/97) *citing* Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 897 (1st Cir. 1988).

conduct.[57]  "This standard is undeniably high, 'outrageous' and 'extreme' conduct 'go[ing] beyond all possible bounds of decency, and … atrocious and utterly intolerable in a civilized community.'"[58]  "A victim's known susceptibility to emotional distress is relevant to this inquiry."[59]  The allegations in plaintiff's complaint do not meet this high standard to state a claim for intentional infliction of emotional distress.  Nothing in plaintiff's complaint is outrageous or atrocious conduct utterly intolerable in society.  Thus, she also fails to state a claim for intentional infliction of emotional distress and this claim should be summarily dismissed as well.

WHEREFORE, defendant, the State of Louisiana, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, prays that this honorable court grants this motion for summary judgment and dismisses plaintiff's suit with prejudice and at her cost.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

**BY:**    *s/Michael C. Keller*
**MICHAEL C. KELLER (#20895)**
**ASSISTANT ATTORNEY GENERAL**
LOUISIANA DEPARTMENT OF JUSTICE
LITIGATION DIVISION
400 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone:    (504) 599-1200
Facsimile:    (504) 599-1212
Email: kellerm@ag.louisiana.gov

---

[57] White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).
[58] Martin v. Winn-Dixie La. Inc., 132 F.Supp.3d 794, 824 (M.D. La. 09/23/15) *citing* White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).
[59] Shaboon v. Duncan, 252 F.3d 722, 734 (5th Cir. 2001).

## CERTIFICATE OF SERVICE

I hereby certify that on August 9th, 2016, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system.

*s/Michael C. Keller*
**MICHAEL C. KELLER**