UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| KATHRYN FRANKOLA | CIVIL ACTION |
| | NUMBER:  2:15-CV-05933 |
| VERSUS | SECTION:  H(5) |
| LOUISIANA STATE UNIVERSITY SCHOOL OF MEDICINE IN NEW ORLEANS, and BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY and AGRICULTURAL and MECHANICAL COLLEGE | JUDGE JANE TRICHE MILAZZO MAG. JUDGE  MICHAEL NORTH |

**********************************

STATEMENT OF UNCONTESTED FACTS

NOW INTO COURT, through undersigned counsel, comes defendant State of Louisiana, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, who respectfully submits the following statement of uncontested facts in support of its motion for summary judgment.

1.      Plaintiff originally began attending the LSU School of Medicine in the fall of 2010 pursuant to her admittance in a dual degree program with LSU School of Graduate Studies.[1]

2.      This dual degree program is commonly referred to as the M.D./Ph.D. program, and

---

[1] Exhibit A, Deposition of Kathryn Frankola, page 13 line 25 through page 14 line 6; Exhibit B, Deposition of Joseph Delcarpio, page 20 line 3 through 16 and page 21 line 13 through page 22 line 13; and Rec. Doc. 1 page 2 paragraphs 11, 13, and 19.

1

provides a mechanism for an out-of-state student to gain access to the medical school curriculum.[2]

3.    The out-of-state student's continued access to the medical school curriculum is contingent upon continued acceptance in the dual degree program.[3]

4.    Further, the out-of-state student is under the auspices of the School of Graduate Studies and receives a tuition waiver for the medical school curriculum.[4]

5.    In the second semester of plaintiff's first year under the dual degree program, she failed Physiology.[5]

6.    This failure resulted in plaintiff's dismissal from LSU.[6]

7.    However, in the summer of 2011, plaintiff retook and passed Physiology at the University of Vermont.[7]

8.    Thereafter, plaintiff returned to New Orleans to live and work for a year to establish in-state residency to apply for admittance to the LSU School of Medicine.[8]

9.    Plaintiff's application to LSU School of Medicine was accepted and she began the second year curriculum of medical school in the fall of 2012.[9]

10.    However, in the fall semester of 2012 plaintiff failed Pathology.[10]

11.    Because of this failure, plaintiff was required to retake Pathology in the summer of

---

[2] Id.
[3] Exhibit A page 14 lines 2 through 6.
[4] Exhibit B page 20 lines 3 through 12.
[5] Rec. Doc. 1 page 3 paragraph 17 and Exhibit A page 9 lines 21 through 24.
[6] Exhibit A page 13 line 25 through page 15 line 14 and Exhibit B page 43 lines 3 through 12.
[7] Rec. Doc. 1 page 3 paragraph 22.
[8] Exhibit A page 13 line 25 through page 15 line 14 and Rec. Doc. 1 paragraphs 23 and 25.
[9] Id.
[10] Exhibit A page 15 lines 15 through 18 and Rec. Doc. 1 page 4 paragraph 27.

2013.[11]

12.     Plaintiff failed the summer 2013 remediation of Pathology.[12]

13.     Thus, by the end of plaintiff's second year of the medical school curriculum she had failed three courses; including the same Pathology course twice.  Consequently, in late summer of 2013, plaintiff's failures were brought before the Promotions Committee of the LSU School of Medicine for a determination as to plaintiff's future with the university.[13]

14.     The Promotions Committee split the vote between three alternatives, dismissal, repeat the entire second year curriculum, or just repeat Pathology.[14]

15.     Ultimately, plaintiff was required to repeat the entire second year curriculum on academic probation to remain enrolled.[15]

16.     Academic probation meant automatic dismissal from the institution for a single fail in any course.[16]

17.     Plaintiff began her repeat of the second year curriculum in the fall of 2013.[17]

18.     Very shortly thereafter, plaintiff became pregnant in September of 2013.[18]

19.     By the spring 2014 semester plaintiff had missed several days of school.[19]

---

[11] Rec. Doc. 1 page 4 paragraph 27.
[12] Exhibit A page 18 lines 3 through 9 and Rec. Doc. 1 page 4 paragraph 28.
[13] Exhibit A page 20 line 11 through page 21 line 13 and Exhibit B page 55 line 19 trough page 56 line 19.
[14] Exhibit A page 20 line 11 through page 21 line 13.
[15] Exhibit C; Exhibit A page 20 line 11 through page 21 line 13; Exhibit B page 55 line 19 trough page 56 line 19; and Rec. Doc. 1 page 4 paragraph 31.
[16] Exhibit C, letter dated August 13th, 2013 from Dr. Delcarpio to Kathryn Frankola and Exhibit B page 57 line 5 through line 21.
[17] Rec. Doc. 1 page 5 paragraph 32.
[18] Rec. Doc. 1 page 5 paragraph 33.
[19] Rec. Doc. 1 page 5 paragraph 36; Exhibit A page 21 line 19 through page 23 line 4; and Exhibit B page 63 line 6 through page 67 line 3.

20.     Consequently, plaintiff discussed her options regarding her school work and exams with Joseph Delcarpio, Ph.D, Associate Dean of Student Affairs and Records for the LSU School of Medicine.[20]

21.     Ultimately, plaintiff requested a medical leave of absence in the middle of the 2014 spring semester, which required her to seek readmission to the school upon the presentment of letters from her doctors indicating that she is cleared to return to the rigors of a fulltime medical school curriculum.[21]

22.     In November of 2014, plaintiff requested to return to LSU School of Medicine.[22]

23.     Consequently, plaintiff and her case appeared before the Pre-clinical Sciences Readmissions Committee on November 17th, 2014.[23]

24.     The Readmissions Committee unanimously voted not to readmit plaintiff.[24]

25.     Plaintiff was informed of the committee's decision, and within fifteen days appealed the committee's decision to the Dean of the LSU School of Medicine, Steve Nelson, M.D.[25]

26.     In January 2015, plaintiff was informed that her appeal to the Dean was denied.[26]

27.     Thereafter, plaintiff filed this lawsuit on November 13th, 2015.[27]

28.     All alleged events, except the denial of plaintiff's re-admittance to the school of medicine

---

[20] Exhibit A page 21 line 19 through page 23 line 4 and Exhibit B page 63 line 6 through page 67 line 3.
[21] Exhibit D, email dated June 5th, 2014 to Kate Welsh from Dr. Delcarpio, which is authenticated in Exhibit A page 58 line 20 through page 61 line 22; and Exhibit A page 21 line 19 through page 23 line 4; and Exhibit B page 63 line 6 through page 67 line 3.
[22] Rec. Doc. 1 page 7 paragraph 56 and Exhibit A page 23 line 19 through page 25 line 25.
[23] Exhibit E, committee members' declarations and Exhibit A page 23 line 19 through page 25 line 25.
[24] Exhibit E.
[25] Rec. Doc. 1 page 8 paragraph 61 and Exhibit A page 26 line 8 through 24.
[26] Rec. Doc. 1 page 8 paragraph 62 and Exhibit A page 26 line 8 through 24.
[27] Rec. Doc. 1.

in November of 2014, are prescribed under plaintiff's causes of action.

29.     Plaintiff cannot establish that defendant's actions were discriminatory or otherwise refute its legitimate reasons for its actions.

30.     Ms. Frankola failed to meet the academic standards of the medical school program, thus was not otherwise qualified under the statutes.[28]

31.     Plaintiff had a poor academic record during her brief time at the LSU School of Medicine.  She failed to pass three courses; one after multiple attempts, and was on academic probation when she took medical leave just before an exam period.  Upon plaintiff's application for readmission to the school after her medical leave, the LSU School of Medicine Pre-clinical Sciences Readmissions Committee exercised its academic discretion and unanimously decided to deny her readmission based solely upon her poor academic performance.[29]

32.     In its professional judgment the Readmissions Committee simply decided that Ms. Frankola failed to perform adequately or make sufficient academic progress.[30]

33.     Plaintiff's academic record was poor the entire time she was enrolled in medical school; and in three years of enrollment she did not complete a single year of study successfully.[31]

34.     This is sole reason plaintiff was denied readmission into school after she took medical leave.[32]

35.     For the same reasons set out above, plaintiff's Title IX claim fails because she was not

---

[28] Exhibit E.
[29] Exhibit E.
[30] Shaboon v. Duncan, 252 F.3d 722, 731 (5th Cir. 2001).
[31] Exhibit E.
[32] Exhibit E.

meeting the required academic performance standards of the university.

36.    Nowhere in her complaint has plaintiff identified a specific legal duty under Louisiana law that defendant allegedly breached.   Accordingly, plaintiff's reference to negligence is completely conclusory and fails to sufficiently state a valid legal claim.

37.    Nothing alleged in plaintiff's complaint comes remotely close to the high standard necessary to sustain an action for intentional infliction of emotional distress.

38.    The allegations in plaintiff's complaint do not meet this high standard to state a claim for intentional infliction of emotional distress.   Nothing in plaintiff's complaint is outrageous or atrocious conduct utterly intolerable in society.

WHEREFORE, defendant State of Louisiana, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, prays that the foregoing be deemed sufficient to show that no genuine issue of material fact exists for trial such that the defendant's motion for summary judgment should be granted and this suit dismissed.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

**BY**:    */s/ Michael C. Keller*
          **MICHAEL C. KELLER (#20895)**
          **ASSISTANT ATTORNEY GENERAL**
          LOUISIANA DEPARTMENT OF JUSTICE
          LITIGATION DIVISION
          400 Poydras Street, Suite 1600
          New Orleans, Louisiana 70130

6

Telephone No. 504-599-1200
Facsimile No.  504-599-1212
Email:  kellerm@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 9th, 2016, I electronically filed the foregoing using the

court's CM/ECF system.

　　　　　　*/s/Michael C. Keller*
　　　　　　**MICHAEL C. KELLER**