**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KATHRYN FRANKOLA** | * **CIVIL ACTION NO. 2:15-CV-05933** |
| **Plaintiff** | * |
| | * **SECTION H(5)** |
| **Versus** | * |
| | * **JUDGE JANE TRICHE MILAZZO** |
| **BOARD OF** | * |
| **SUPERVISORS OF LOUISIANA** | * **MAGISTRATE JUDGE MICHAEL** |
| **STATE UNIVERSITY and AGRICULTURAL** | * **NORTH** |
| **and MECHANICAL COLLEGE** | * |

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**</u>

MAY IT PLEASE THE COURT:

Plaintiff, Kathryn Frankola, submits this Opposition to the Motion for Summary judgment filed by the Defendant, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (hereinafter referred to as "LSU").

**FACTUAL BACKGROUND**

In March of 2010, Kathryn Frankola was accepted into Louisiana State University School of Medicine in New Orleans ("LSU").[1]    Specifically, she was admitted into Louisiana State University School of Medicine in New Orleans' M.D./Ph. D. program.[2] At the outset, in August of 2010, the Dean of Students of LSU was made aware of Ms. Frankola's bipolar medical condition.[3]   Ms. Frankola was hospitalized in the fall of 2010 with a severe case of manic behavior which arose out of her bipolar condition.[4]

---

[1] Exhibit A, Affidavit of Kathryn Frankola
[2] Exhibit A, Affidavit of Kathryn Frankola
[3] Exhibit B,  Deposition of Dr. Joseph B. Delcarpio, Ph.D., page 15 line 20 through page 16 line 22.
[4] Exhibit A, Affidavit of Kathryn Frankola

Instead of offering immediate accommodations to Ms. Frankola, Ms. Frankola was treated as a regular first year student, and in fact, was encouraged to pursue extracurricular activities.[5] These activities put even more of a strain on her disability.[6]

Throughout her time as a student at LSU, she made numerous requests for accommodations.[7] Not only were these requests denied, but Ms. Frankola was misled to believe that no accommodations existed for her. Even more damaging, she was promised accommodations which ultimately were never given.[8]

In 2011, Ms. Frankola requested that she be relieved of "Camp Tiger" activities.[9] Camp Tiger is a day camp for children with special needs that is run by students of the LSU School of Medicine.[10]   This request was denied by Dr. Delcarpio.[11] Had she been allowed to skip this activity, she could have avoided academic difficulty which led to her having had to take a year off.[12]

Soon after, Ms. Frankola requested that she be allowed to skip a social event for MD/Ph.D. students.[13]  This accommodation was denied by Dr. Kathleen McDonough and/or Dr. Delcarpio despite the fact that they were well aware of her bipolar condition.[14]  Again, this was an accommodation that was denied to plaintiff which resulted in adverse academic actions being taken against her.[15]

---

[5] Exhibit A, Affidavit of Kathryn Frankola
[6] Exhibit A, Affidavit of Kathryn Frankola
[7] Exhibit A, Affidavit of Kathryn Frankola
[8] Exhibit A, Affidavit of Kathryn Frankola
[9] Exhibit A, Affidavit of Kathryn Frankola
[10] Exhibit A, Affidavit of Kathryn Frankola
[11] Exhibit A, Affidavit of Kathryn Frankola
[12] Exhibit A, Affidavit of Kathryn Frankola
[13] Exhibit A, Affidavit of Kathryn Frankola
[14] Exhibit A, Affidavit of Kathryn Frankola
[15] Exhibit A, Affidavit of Kathryn Frankola

In Fall of 2012, plaintiff failed a pathology course.[16]  Along with several other students, she was allowed to retake this course during the Summer of 2013.[17]  Prior to retaking the Pathology course over the summer, Ms. Frankola requested that she be allowed to take the test later and/or be allowed to retake the test.[18]  At the time, she was suffering from a disabling manic/bipolar episode and felt that she was not going to be able to perform to the best of her abilities.[19]  This request for an accommodation was denied.[20]  Based on information and belief, LSU allowed another student to take a "condensed" version of the course.[21]  This accommodation was not offered to Ms. Frankola.[22]

In the Fall of 2013,  Kathryn Frankola became pregnant.[23]  After discussing her pregnancy and bipolar condition with Dr. Delcarpio, it was recommended that she take a medical leave of absence.[24] During deposition testimony, Dr. Joseph Delcarpio, former Dean of Students at LSU testified that Kathryn Frankola was "reluctant, but I said 'Kate, if you fail a course, there's no recourse. I'm going to drop you. The school will' not me, 'the school will drop you automatically that day.' And so she thought about it and she decided to go ahead and take medical leave."[25]  She was assured that all she needed to do was participate in the Campus Assistance Program and provide a "Fit for Duty" letter and she would be allowed to resume classes.[26]  This was a proposed accommodation that was being offered to Ms. Frankola as a result of her pregnancy and bipolar condition.  On or about April 17, 2014, plaintiff received

---

[16] Exhibit A, Affidavit of Kathryn Frankola
[17] Exhibit A, Affidavit of Kathryn Frankola
[18] Exhibit A, Affidavit of Kathryn Frankola
[19] Exhibit A, Affidavit of Kathryn Frankola
[20] Exhibit A, Affidavit of Kathryn Frankola
[21] Exhibit A, Affidavit of Kathryn Frankola
[22] Exhibit A, Affidavit of Kathryn Frankola
[23] Exhibit A, Affidavit of Kathryn Frankola
[24] Exhibit C,  Deposition of Dr. Joseph B. Delcarpio, Ph.D., page 62 lines 18-21.
[25] Exhibit D,  Deposition of Dr. Joseph B. Delcarpio, Ph.D., page 66 line 23 through Page 67, line 3.
[26] Exhibit A, Affidavit of Kathryn Frankola

documentation from Scott Embley, head of the Campus Assistance Program, confirming her medical leave.[27]    Instead of following through with this accommodation, LSU essentially dismissed Ms. Frankola as a student without notice and required her to go through a readmission process.[28] Appallingly, LSU decided to not allow Ms. Frankola to resume classes based on "academic reasons".[29]

During his deposition, Dr. Joseph Delcarpio testified that he explained to Kathryn Frankola that she would have to be readmitted to the school because she was on academic probation at the time of her medical leave.[30] This allegation is vehemently denied. At no time, were any risks of the medical leave communicated to Ms. Frankola.[31] Further, there are no written rules for specific risks associated with taking medical leave for students who are on academic probation.[32]

On November 17, 2014, Plaintiff was informed she would not be allowed to resume classes at LSU.  In accordance with LSU's appeal process for academic dismissal, Plaintiff appealed the decision within fifteen (15) days of the notification of her dismissal.[33]        In January of 2015, plaintiff was informed that her appeal was denied.[34]

LSU treated Ms. Frankola differently from her peers as a direct result of her pregnancy and bipolar condition. Further, they promised Ms. Frankola an accommodation and ultimately rescinded this accommodation in 2014.  LSU's reckless and discriminatory actions are in blatant

---

[27] Exhibit A, Affidavit of Kathryn Frankola
[28] Exhibit A, Affidavit of Kathryn Frankola
[29] Exhibit A, Affidavit of Kathryn Frankola
[30] Exhibit D,  Deposition of Dr. Joseph B. Delcarpio, Ph.D., page 69,  line 6 through line 15.
[31] Exhibit A, Affidavit of Kathryn Frankola
[32] Exhibit E,  Deposition of Dr. Joseph B. Delcarpio, Ph.D., page 80,  line 18 through Page 81, line 9.
[33] Exhibit A, Affidavit of Kathryn Frankola
[34] Exhibit A, Affidavit of Kathryn Frankola

violation of Section 504 of the Rehabilitation Act, Title II of the American with Disability Act, 20 U.S.C. § 1681, *et seq*, and Louisiana negligence laws.

Because of her pregnancy and bipolar condition, plaintiff was singled out and not allowed the same process or procedure which would have been afforded to other classmates in the same circumstances. Plaintiff was treated differently than her peers and was discriminated against based upon her medical disabilities and pregnancy.

**STANDARD OF SUMMARY JUDGMENT**

District Courts shall grant summary judgment where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56(a).  The evidence, as well as the inferences that may be drawn from the evidence must be viewed in the light most favorable to the party that opposed the motion for summary judgment.  *Little vs. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992).    If    the    evidence would permit a reasonable trier of fact to find for the nonmoving party, then summary judgment should not be granted.  *Anaya v. Traylor Bros., Inc.*, 478 F.3d 251, 253 (5th Cir. 2007).

Summary judgment is not proper if the non-movant shows that there are genuine disputes of material fact and that the movant is not entitled to judgment as a matter of law.  *Celotex Corp. v.Catrett*, 477 U.S. 317, 322 (U.S. 1986).

In *Brennan v. Stewart*, the court held that the reasonable accommodation issue in an ADA case should be "decided as an issue of fact-meaning, of course, that it is one for the trial court or jury."  *Brennan v. Stewart*, 834 F.2d 1248, 1262 (5th Cir. 1988).

> **Plaintiff's prior academic record is a result of defendant's denial of reasonable accommodations. In addition, plaintiff's prior academic record was wrongly used against her in her wrongful dismissal from LSU.**

5

In defendant's Memorandum in Support of Motion for Summary Judgment, plaintiff's academic record with LSU is detailed at length. However, Defendant fails to inform the court of her prior requests for accommodations which were denied by Defendant.

Specifically, in the Spring of 2011, Kathryn Frankola requested that she be relieved of Camp Tiger activities. This request for an accommodation was denied. Also in the Spring of 2011, Kathryn Frankola requested that she be allowed to skip a social event for M.D./Ph.D. students. This request for an accommodation was denied.  In the summer of 2013, Kathryn Frankola requested that she be allowed to take her Pathology test later and/or be allowed to retake the test.  At the time of this request, plaintiff was suffering was a disabling bi-polar manic episode. This request for an accommodation was denied.  All of these requests for accommodations were reasonable.  Moreover, these accommodations could have been easily provided by defendant. Instead, defendant chose to deny plaintiff's requests which directly resulted in her academic struggle at LSU.

When plaintiff took her medical leave in the Fall of 2013, she was not informed of any risks associated with the medical leave. The medical leave that she agreed upon was temporary, not permanent. Plaintiff was not informed that she would need to be "readmitted" to LSU in order to resume classes.  Plaintiff was only told by Dr. Joseph Delcarpio that she would need to participate in the Campus Assistance Program and produce a "Fit for Duty" letter from her treating physician in order to resume classes at LSU. The only evidence that defendant produces in support of its argument that plaintiff was informed of the risks of her medical leave is a self-serving e-mail dated June 5, 2014.[35]  This e-mail, which was marked "Confidential" by Dr. Delcarpio, was sent <u>five months</u> after plaintiff took her medical leave.

---

[35] Exhibit F, e-mail dated June 5, 2014 to Kathryn Frankola from Dr. Joseph Delcarpio.

In April of 2014, Kathryn Frankola produced a "Medical Release" signed by her treating physician, to LSU.[36]  On or about April 17, 2014, plaintiff received documentation from Scott Embley, head of the Campus Assistance Program, confirming her medical leave.[37]

After realizing that she may not be allowed to resume classes at LSU for "academic reasons", she e-mailed Dr. Joseph Delcarpio:

> "As the Dean of Students I trusted that you were always acting in my best interests. If the medical leave was not in my best interest, I wish you had suggested doing all I could do to get ready for exams, instead, that day we met in January. I do not understand why you suggested medical leave as being in my best interests-academic and otherwise-if it was truly not, since the committee decided that my lack of continuity was the problem. I followed your advice!! I also tried to look for relevant classes being offered, but there were none, so I though trying to focus on studying for step with a few good resources while taking care of my son was a good plan."[38]

On November 7, 2014, plaintiff's treating physician Dr. Leslie Lawrence provided LSU with a "Medical Release Fitness for Employment/Enrollment Form."[39] On November 14, 2014, Scott Embley issued correspondence to Dr. Delcarpio in which he recommended "consideration be given for administrative referral and the continuation of enrollment contract for fitness for duty."[40]

LSU's discriminatory "bait and switch" actions were made only because Kathryn Frankola was pregnant and diagnosed with a bipolar medical condition. Had plaintiff not been pregnant and had plaintiff not been diagnosed with a bipolar condition she would never have been dismissed from LSU. Moreover, she never would have been treated differently than her other peers who took medical leave.

**Plaintiff filed her suit well within the limitations period.**

---

[36] Exhibit G, Medical Release signed by Dr. Casessa
[37] Exhibit H, April 17, 2014 correspondence from Scott Embley to Kathryn Frankola.
[38] Exhibit I, November 18, 2014 e-mail correspondence from Kathryn Frankola to Dr. Joseph Delcarpio.
[39] Exhibit J, See Medical Release dated November 7, 2014.
[40] Exhibit K, November 14, 2014 correspondence from Scott Embley to Dr. Delcarpio.

The particular accrual date of a federal cause of action is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Walker v. Epps*, 550 F.3d 407, 117 414 (5th Cir. 2008). The rule is that "accrual occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) citing *Wallace v. Kato*, 549 U.S. at 388 (citations and quotation marks omitted). Accrual occurs "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). An injury occurs under Title II of the Americans with Disability Act when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity. *Frame* at 238.

The continuing violation doctrine embraces two types of cases. The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation. *Hendrix v. City of Yazoo*, 911 F.2d 1102, 1103 (5th Cir. 1990). The second type of violation is one in which the initial violation, outside the statute of limitations is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations. *Id.* The continuing violations doctrine relieves a plaintiff of a limitations bar if he can show a series of related acts to him, one or more of which falls within the limitations period. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

It is undisputed that plaintiff was first informed of her dismissal from LSU on November 17, 2014. It is also undisputed that plaintiff appealed this decision through LSU's process of appeal. This appeal was denied in January of 2015. Plaintiff timely filed the instant case on

November 13, 2015.  Accrual occurred in January of 2015 immediately after plaintiff exhausted the appeals process at LSU. This is when Kathryn Frankola had a cause of action which allowed her to file suit and obtain relief.  All of the requests for accommodations that were ultimately denied by defendant were continuing discriminatory acts which culminated in plaintiff's wrongful and discriminatory dismissal from LSU.

All of defendants actions prior to Plaintiff's wrongful dismissal from LSU showed a pattern of discriminatory actions that became clear when plaintiff was dismissed from LSU on November 17, 2014.  Plaintiff's e-mail dated November 17, 2014 clearly shows her shock and outrage and defendant's conduct. Before this time, plaintiff was lulled into a false sense of security while she was being discriminated against by LSU.  Defendant's actions were all part of a series of discriminatory actions and as such are time barred under the continuing violation doctrine.

> **LSU's continuing failure to provide reasonable accommodation to Kathryn Frankola and its intentional failure to follow through with its 2014 accommodation for Kathryn Frankola are contested issues of fact which preclude summary judgment.**

It is well established that, the reasonable accommodation issue in an ADA case should be decided "as an issue of fact – meaning, of course, that it is one for the trial court or jury." *Brennan v. Stewart*, 834 F. 2d 1248, 1262 (5th Cir. 1988).

LSU failed to offer reasonable accommodations to Kathryn Frankola in 2011, 2012, 2013, and 2014.  Further, despite academic difficulties, Kathryn Frankola met the academic standards of the medical school program. LSU unlawfully discriminated against Kathryn Frankola when it expelled her in 2014. Further, Kathryn Frankola was not informed of any risks of taking medical leave in 2014. LSU dismissed Kathryn Frankola because of her status as a pregnant student with bipolar disorder. Finally, LSU intentionally inflicted emotional distress

upon Kathryn Frankola. These are all questions of fact which preclude summary judgment.

Plaintiff has shown that she has a qualifying disability. To come within the coverage of the Rehabilitation Act of 1973, a person must have a "physical or mental impairment that substantially limits one or more major life activities." *Duncan v. Univ. of Texas Health Sciences Center at* Houston, 631 F.3d 203, 8 (5th Cir. 2011) citing 42 U.S.C. § 12102(1)(A). These are activities such as "hearing, speaking, breathing, learning and working." *McInnis,* 207 F.3d at 280. The Rehabilitation Act and the ADA are judged under the same legal standards, and the same remedies are available under both Acts. *Shurb v. Univ. of Texas Health Sciences Center at Houston-School of Medicine*, 63 F. Supp. 3d 700, 706 (S.D. Tex. 10/24/14). As stated above, Kathryn Frankola was hospitalized on at least one occasion for her bipolar condition. Moreover, she was encouraged to provide "Fit fir Duty" letters from her treating physician which clearly indicate that she had a continuing disability.

Kathryn Frankola also was entirely qualified to participate in the defendant's program. At the time she was wrongfully dismissed, she was a pregnant student on academic probation who was encouraged by Dr. Joseph Delcarpio to take medical leave. In no way, did her academic probation disqualify her to be enrolled as a student at LSU. In fact, it encouraged her to participate more and to focus on her academic standing. Finally, Kathryn was excluded from the program solely based upon her disability. <u>The only reason she took the medical leave at LSU was because of her status as a pregnant student with a bipolar medical condition.</u> Had she not taken medical leave, she would have never been expelled from LSU. Further, all of the accommodations requested by Kathryn Frankola were because of her medical condition.

Regarding plaintiff's Title IX claims: the only argument defendant makes in favor of dismissing plaintiff's claims is that plaintiff was not meeting the "required academic

10

performance standards of the university." This is entirely false. At the time she took medical leave, she was meeting the performance standards of the university as an active student who was on academic probation. The fact that she was on academic probation furthers Kathryn Frankola's position that she was an active and participating student at LSU when she was wrongfully discriminated against.

Plaintiff's state law claims are also entirely warranted considering LSU's discriminatory and negligent actions. Louisiana Civil Code art. 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

LSU's discriminatory and negligent actions were devastating to Kathryn Frankola. At the time she was expelled, she was a mother of a newly born child treating for her bipolar medical condition. Instead of simply allowing Kathryn Frankola to return to school, LSU concocted a sham reason for dismissing her: academic reasons. At the time of her dismissal, she was under the impression she was being offered a simple accommodation: medical leave under the condition she produce a "Fit for Duty" letter from her treating physician. Kathryn Frankola upheld her end of the agreement. LSU did not. Instead, LSU intentionally discriminated against Kathryn Frankola as a result of her pregnancy and her bipolar condition. Had Kathryn Frankola not taken her medical leave, and had Kathryn Frankola been provided the requested accommodations, she would likely have passed all of her exams and continued on towards graduation. Instead, LSU created an irreversible blemish on Kathryn Frankola's resume and career.

Regardless, these are all questions of fact which preclude any summary. For these reasons, LSU's Motion for Summary Judgment should be properly DENIED.

11

## CONCLUSION

Plaintiff's prior academic record is a result of defendant's denial of reasonable accommodations. In addition, plaintiff's prior academic record was wrongly used against her in her wrongful dismissal from LSU. Plaintiff filed her suit well within the limitations period. Finally, LSU's continuing failure to provide reasonable accommodation to Kathryn Frankola and its intentional failure to follow through with its 2014 accommodation for Kathryn Frankola are contested issues of fact which preclude summary judgment. Accordingly, LSU's Motion for Summary Judgment should be properly DENIED.

Respectfully submitted,

*/s/  Jon G. Bethune*

**JON G. BETHUNE (Bar #30221)**
The Law Office of Jon G. Bethune, L.L.C.
4701 Tchoupitoulas Street, Suite B
New Orleans, Louisiana 70115
Telephone:  (504) 218-8570
Facsimile:   (504) 267-4893
e-mail: jbethune@bethune-law.com
**ATTORNEY FOR KATHRYN FRANKOLA**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading is being served upon all counsel of record/parties by e-mail transmission, and/or the courts electronic filing system on this 16th day of August, 2016.

/s/  Jon G. Bethune

**THE LAW OFFICE OF JON G. BETHUNE, L.L.C**